Wardlaw, Ch.
I dissent from so much of the decree, in this case, as requires the ex-Ordinary to transfer funds in his possession to his successor, where bills in Equity have been filed against the former, by the distributees of the derelict estates in his hands. In some of these cases, the Court of Equity has adjudged and ordered, by final decrees, that William H. Thompson pay to persons, by name, 'specific sums of money ; and I do not see hów he could protect himself from process of attachment, if he failed to perform the decrees. This Court, sitting as a Court of Equity, now orders the defendant to do that which is directly inconsistent with former subsisting decrees, namely, to pay to the present plaintiff the same money previously ordered to be paid to Kottman, and others. By the judgment of this Court, error is imputed to the Chancellor who heard the cause, because he did not entertain appeals from the decisions of his equals in authority, and reverse or modify their decrees.
The notion is unfounded, that when a person is effectually sued as an officer, the judgment is against him officially, or in other words, against the metaphysical entity of his office. Upon this conceit, if a rule against a sheriff to pay money be made absolute, the liability would follow the office into the hands of his successor, where there was no' default on the part of the successor. It is no answer to this illustration to say, that by statute, a sheriff may be ruled for two years after he retires from office. That provision only shows, that for some purposes, two persons may cotemporaneously fill the office of sheriff; and, if judgments against an officer be against the office, both would be liable, *505 under the rule made absolute. All proceedings of Courts are, in effect, against natural persons. This is least obvious where judgments are obtained against the corporate assets of corporations aggregate, but even there, the assets must be found in the possession of corporators, or other men. The Ordinary is a corporation sole; but, in proceedings in Courts, reference is necessarily had to the individuals who have filled, and fill, and shall fill, the office. The present suit is Fowke against Thompson — man against man-^-no an office against what has been an office. There is nothing peculiar in the circumstance, that the liability of the person sued, may be restricted to the estate he holds in a particular capacity. Such is usually the fact as to judgments against executors, administrators, and other trustees.
It may be said, that if the ex-Ordinary pay to the incumbent the moneys he has been decreed to pay to others, he may plead, to any process against him personally, that he has transferred the funds that were in his possession, at the dates of the decrees, to his successor in office. But it may be, that those who may have decrees against him, will not indulge him with leisure, to open, or to plead, and will lodge him in jail. Besides, the procedure of pleading after judgment is anomalous. Moreover, even indulgent creditors, having judgments against him, may well be disinclined to surrender their lien and ready remedy against one undoubtedly solvent, and take in substitution a claim agáinst another, who is no party to the record, and who, possibly, may be less able, or utterly unable, to pay.
It is argued, however, that these decrees by the Court of Equity for payment by the Ordinary, to the distributees of derelict estates, are void, as the Court has no jurisdiction or authority to contravene the special and limited mode of administering derelict estates, prescribed to the Ordinary by the legislature. The Court, in making these decrees, did not assume any power to repeal or modify the Acts of the legislature. Yet it did not construe the Acts as ousting the Court of its jurisdiction against trustees, under the general heads of discovery, account, and *506 partition. It is plain, that the course of administration of derelict estates prescribed to the Ordinary, is, in its whole arrangement, alternative and substitutional. The Ordinary may, at any stage of his transactions, be superseded by a regular administrator, or arrested in his action by the Superior Courts. He is to pursue a certain routine, if not interfered with by the parties in interest, or the Courts; but not, at all events, to take the round, where, by the intervention of the distributees, the estates cease, in substance, to be derelict.
There is no doubt that the Ordinary, in administering these estates, is a trustee, nor that this Court is the proper tribunal for enforcing trusts. The purpose of the legislature was, to provide a trustee, where the usual modes of appointment failed, but surely not to exempt the trustee from the usual remedies of beneficiaries against him. If the Ordinary is not liable to interference from this Court, it would seem to follow, that the only resort of distributees is upon the funds he chooses to deposite in Bank, as the net balance of his transactions. His judgment in his own favor, rendered without opportunity of contestation, however inadequate or fraudulent, will be conclusive. In the Court of Equity, an interested party does not adjust his own accounts, and the administration of trusts is subjected to thorough examination by competent officers, under the vigilant oversight of the parties in interest.
In all cases pending in this Court, against the ex-Ordinary, whether in judgment or not, the funds are transferred by operation of law from the inferior to the superior tribunal; and the 7th section of the Act of 1839, has no longer application. Wherever this Court takes cognizance of a cause, it must have the charge, in some sort the custody, of the funds in controversy, to enable it to do justice to the parties, in the distribution of the funds, and it immediately ousts the inferior tribunal of all authority to act, concerning the subject of controversy, except under the direction of this Court. Where, for example, an administrator, or other trustee, is called to account in this Court, he is required, by the procedure of the Court, to make his an *507 nual returns, pending the suit, to the proper officer of this Court, and is liable to punishment for contempt, if he make returns to •the Ordinary. It is a mistake, however, to suppose, that it is any contest between Courts, when an Ordinary is required to account here for-his management of derelict estates. When he administers such aii estate, he acts, not judicially, but ministerially. The term administration itself implies the ministerial character of his acts in such case. He is not only Judge, but Clerk, of his Court; and many of his acts, besides the administration of estates, are ministerial. In 1837, the legislature, by Act, required the solicitors to examine the condition of the Ordinary’s office, as of other district offices, and to report annually to the Court of Common Pleas, It would be strange if the legislature really intended to give to such subordinate officers, as the solicitors, powers of supervision, which it withheld from this Court.
In those cases pending against the defendant, in which decrees have not been rendered, it is impossible for him to foreknow the precise extent of liability that may be imposed upon him by the Court. Yet, it would seem to be fair, that, if he is required to pay the moneys to his successor, he should be relieved from all trouble and expense in defending the suits ; but that is impracticable.
Johnston, Ch. and Wi-iitner, J. concurred.